UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.W., by and through his parent and guardian ad litem Amy Wright,<br><br>Plaintiff,<br><br>v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | No. 1:17-cv-00854-DAD-JLT<br><br>ORDER AFFIRMING ALJ'S DECISION ON APPEAL<br><br>(Doc. No. 25) |

A.W., by and through his parent and guardian *ad litem* Amy Wright, filed the complaint in this action on June 25, 2017 and a first amended complaint on April 13, 2018. (Doc. Nos. 1, 18.) Plaintiff seeks review of the decision of an administrative law judge ("ALJ") following a due process hearing under the Individuals with Disabilities Education Act ("IDEA"), which was conducted in February 2017. (Doc. No. 18 ("FAC") at ¶¶ 9–11.) Plaintiff's opening brief in this action was filed on May 18, 2018. (Doc. No. 25.) Tehachapi United School District (hereinafter "defendant" or "District") filed an opposition brief on July 13, 2018, and plaintiff replied on July 27, 2018. (Doc. Nos. 33, 34.) The court heard oral argument on September 5, 2018, with attorney Andrea Marcus appearing on behalf of plaintiff and attorney Stephanie Gutcher appearing on behalf of defendant. At the conclusion of oral argument, the court directed the parties to provide supplemental briefing. (Doc. Nos. 37, 38.) Following the submission of those

1

supplemental briefs, the matter was taken under submission.  For the reasons that follow, the decision of the administrative law judge will be affirmed.

**FACTUAL BACKGROUND**

**A.     The ALJ's Factual Findings**

The ALJ's factual findings are largely undisputed[1] and will be summarized below.  (*See* Doc. No. 22-2 at 39–55.)  To the extent undisputed, the ALJ's factual findings are adopted in recognition of the "due weight" to be given to those administrative proceedings.  *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007).

A.W. was nine years old at the time of the administrative hearing.  (Doc. No. 22-2 at 41.)  A.W. was eligible for special education on the bases of autism and Attention Deficit Hyperactivity Disorder.  (*Id.*)  A.W. moved to the District in early 2014, at which time he sought special education and related services.  (*Id.*)  On April 7, 2014, and with the consent of a parent, A.W. was assigned a one-to-one behavioral aide for the remainder of the 2013-2014 school year, as well as the 2014 extended school year.  (*Id.*)  In the August 15, 2014 individualized education plan ("IEP"), A.W. was again assigned a one-to-one behavioral aide, with his parent's consent.  (*Id.*)  Throughout this period, A.W.'s attendance in school was generally poor.  (*Id.*)  That poor attendance continued throughout the 2014–2015 school year:  for the entire 180-day school year, he attended school between 64 and 88 days, with the vast majority of these absences being unexcused.  (*Id.* at 42.)

Dissatisfied with the District's offer of special education services, plaintiff filed a request for a due process hearing.  (*Id.* at 41.)  On December 22, 2015, the Office of Administrative Hearings ("OAH") issued a final decision, which concluded that the District had denied plaintiff a free appropriate public education ("FAPE") by failing to conduct an assessment of A.W.'s behavior after late October 2014, and by failing to offer appropriate behavioral services in the November 6, 2014 IEP.  (*Id.* at 41–42.)  As a remedy, OAH directed the District to provide A.W. 34 hours of individual instruction to compensate for some of the time A.W. had not attended

---

[1] Any relevant factual disputes are discussed in relation to specific issues on appeal below.

2

school. (*Id.* at 42.) In addition, OAH ordered the District "to adopt an interim behavior plan" and to: (1) conduct a functional behavior assessment within 21 days; (2) hold an IEP team meeting within 45 days after the start of the behavior assessment; and (3) provide A.W. with a one-to-one aide, with supervision by a Board-Certified Behavior Analyst ("BCBA"), for two hours per week until that meeting occurred. (*Id.*) The action now pending before the court generally arises from plaintiff's dissatisfaction with the District's conduct in response to the OAH decision.

A.W. returned to school on January 5, 2016, at which time Sara Brus was assigned as his aide, the same aide assigned to him in 2014. (*Id.* at 42–43.) He was placed in a kindergarten through fifth grade classroom for autistic students. (*Id.* at 43.) His behavior was frequently disruptive, and an IEP team meeting was held on January 19, 2016, with the goal of developing interim behavior intervention plans to address three behaviors that impeded the learning of A.W. and others: (1) banging objects together and knocking items off of shelves; (2) aggression, defined as kicking, hitting, and biting; and (3) eloping, defined as leaving the classroom or school boundaries without permission. (*Id.*) A.W.'s parents participated in and contributed to the development of the interim behavior plans. (*Id.*) A document memorializing the January 19, 2016 IEP was produced, although it did not state that the District would provide A.W. with a one-to-one aide trained in applied behavior analysis, nor did it state that a BCBA would provide behavior supervision for two hours per week. (*Id.*) The notes of the IEP team meeting also did not state that such services would be provided. (*Id.*) A.W.'s parents did not consent to the document because they wanted the IEP to state that plaintiff would have 34 hours of individualized instruction (as ordered by the December 22, 2015 OAH decision), that plaintiff would have a one-to-one aide with supervision by a BCBA, and that monitoring and measuring would be done by the one-to-one aide with BCBA supervision. (*Id.*)

Between January 14 and February 20, 2016, school psychologist Dawn Roach conducted a functional behavior assessment of A.W., supervised by Dr. Sanford Slater.[2] Based on this

---

[2] Ms. Roach possessed a bachelor's degree in psychology and a master of science in school psychology. She had completed her course work to become a BCBA, although she had not taken the BCBA exam. (*Id.* at 43 n.7.) Dr. Slater was the director of Autism Partnership, Inc., and a BCBA. (*Id.* at 43–44.)

3

assessment, Ms. Roach prepared a written report dated February 24, 2016, which concluded that a behavior intervention plan was needed to address A.W.'s hitting, kicking, and biting. (*Id.* at 44.) In addition, she concluded that A.W.'s practices of wandering and property destruction could be addressed through "proactive programming." (*Id.*) Defendant scheduled an IEP team meeting for February 25, 2016 to review this report, but that meeting was moved to March 4, 2016 at the request of A.W.'s parents. (*Id.*) Until March 4, 2016, Ms. Brus acted as A.W.'s one-to-one aide, and was with him almost constantly, including during recess and lunch. (*Id.*) Also during that period, Dr. Slater provided approximately two hours per week of supervision of A.W.'s behavioral program, working with Ms. Roach, A.W.'s teacher Ms. Larsen, and the paraprofessionals in A.W.'s classroom. (*Id.*)

At the March 4, 2016 IEP team meeting, Ms. Larsen reported that A.W. had made progress in addressing his maladaptive behaviors, but that he still engaged in spitting, biting, hitting, screaming, laying down on the floor, and swiping items off Ms. Larsen's desk. (*Id.* at 45.) A.W.'s mother testified that she believed his maladaptive behaviors had lessened, which she attributed to the increased behavior support he was receiving at school. Ms. Roach presented her functional behavior assessment at the meeting, as well as her proposed behavior intervention plan for aggression and swiping/property destruction. (*Id.*) A.W.'s parents and their attorneys participated in and generally agreed upon the plan and its proposed goals. (*Id.*) At the meeting, plaintiff's attorneys also inquired as to whether the District would continue to provide A.W. with a one-to-one aide. (*Id.*) Ms. Roach replied that in developing the behavior plan, she had assumed that A.W. would continue to have access to Ms. Brus as a one-to-one aide. (*Id.*) Plaintiff's attorneys stated that they wanted A.W. to continue to have access to a one-to-one aide, and advised that plaintiff would file a request for due process hearing if one was not provided. (*Id.*) Defendant's Director of Programs, Mr. Ferrell, responded to A.W.'s request by saying that "the district will honor that." (*Id.*) However, the provision of a one-to-one aide was not specified in the written IEP document. (*Id.*)

In addition to the request for continued have access to a one-to-one aide, plaintiff's attorneys also requested that the District offer supervision of the one-to-one aide by a BCBA for

4

two hours per week, and again warned that plaintiff would "go to hearing" if this offer was not made. (*Id.*) Mr. Ferrell explained that the District was uncertain if Dr. Slater, who had previously provided such supervision, was available to continue doing so. (*Id.*) Mr. Ferrell also stated that "there should be BCBA oversight," but reiterated that they would need to explore the availability of a BCBA. (*Id.*) Both sides apparently reached an oral agreement that supervision by a BCBA would continue. (*Id.* at 45–46.) Ultimately, the District proposed to continue the IEP team meeting to allow it time to explore the availability of supervision from a BCBA, and to eventually offer such supervision in order to comply with plaintiff's requests. (*Id.* at 46.) At the hearing before the ALJ, Mr. Ferrell testified that the District believed the functional behavior assessment and the behavior intervention plan developed at the March 4, 2016 IEP team meeting would be sufficient to meet A.W. 's needs. (*Id.*)

Joanna Hammer, the school psychologist assigned to Cummings Valley Elementary, participated in the March 4, 2016 IEP team meeting. (*Id.*) Although she did not state during the IEP team meeting whether supervision by a BCBA was necessary, she did testify at the hearing before the ALJ that she believed A.W. did not require such supervision. (*Id.*) Ms. Hammer explained that such supervision is only necessary when a behavior plan is particularly complex, and that A.W. 's behaviors were neither complex nor frequent enough to require supervision from anyone other than a school psychologist. (*Id.*) The ALJ found Ms. Hammer's testimony to be credible. (*Id.*)

Following the March 4, 2016 IEP team meeting, Mr. Ferrell made "some efforts" to locate a BCBA within 50 miles, although the record is unclear as to whether one was ever found.[3] (*Id.*) This information was not reported to A.W. 's parents or his attorneys. (*Id.*) Although the District had previously continued the March 4, 2016 IEP team meeting, that meeting was never reconvened during the remainder of the 2015–2016 school year, nor during the 2016 extended school year. (*Id.*) No explanation was given as to why that meeting was never reconvened. (*Id.* at 47.)

---

[3] Dr. Slater, who had previously provided supervision as a BCBA, was located in Orange County, and had previously come to plaintiff's school roughly twice a month. (*Id.* at 44.)

A.W. attended school consistently from March 4, 2016 to the end of the regular school year on June 3, 2016, during which time Ms. Brus continued to be his one-to-one aide. (*Id.*) Over the spring semester, A.W. 's behaviors improved, with Ms. Larsen characterizing them as "manageable." (*Id.*) Because of this improvement, Ms. Brus decreased her proximity to A.W. and allowed him to attempt tasks on his own. (*Id.*) In addition, Ms. Larsen had different aides rotate in the classroom throughout the day to work with A.W., instead of relying solely on Ms. Brus. (*Id.*) No evidence was presented at the hearing as to the level of involvement by Dr. Slater or any other BCBA in A.W.'s education, and the District conceded that A.W. was not supervised by a BCBA during this period. (*Id.*)

The 2016–2017 school year began on August 17, 2016, although A.W. did not attend until September 9, 2016. (*Id.*) His parents requested an IEP team meeting, which the District convened on September 2, 2016. (*Id.*) The notes of the meeting reflect that the IEP wanted to look at plaintiff's current goals and "move towards finalizing an IEP." (*Id.*) The meeting ended when plaintiff's mother stated that she felt uncomfortable and left. (*Id.*) The parties agree that plaintiff attended school from September 9, 2016 until October 14, 2016, and did not attend school thereafter until the date of the hearing before the ALJ.

At the administrative hearing in February of 2017, the only evidence produced by plaintiff regarding A.W.'s need for supervision by a BCBA at the time of the March 4, 2016 IEP team meeting was the opinion of A.W.'s mother. (*Id.*) A.W.'s mother, who is not an education or behavioral specialist, stated that a BCBA was required because the District had "an intern on the job with no supervision." (*Id.*) Apart from that, plaintiff did not present any evidence, expert or otherwise, demonstrating why A.W. required supervision from a BCBA in order to receive a FAPE. (*Id.*) In issuing the administrative decision the ALJ found that the testimony of A.W.'s mother was less credible than the testimony of Ms. Hammer, who stated that plaintiff did not require supervision by a BCBA in order to receive a FAPE. (*Id.* at 48.)

**B.     The Administrative Hearing**

Plaintiff filed a due process complaint on November 14, 2016, thereby initiating the hearing process. (*Id.* at 39.) Following one continuance, the due process hearing took place on

6

February 14, 15, and 16, 2017. (*Id.*) The hearing concerned whether the District denied A.W. a FAPE from January 2016 to the time of the hearing, by (a) failing to provide him with one-to-one ABA-trained aide with supervision by a BCBA for two hours per week, or (b) failing to file for due process hearing to prove that its offer of January 2016, which was not agreed upon by A.W.'s parents, was an offer of FAPE. (Doc. No. 22 at 7.)[4]

Following the submission of evidence and the filing of briefing by the parties, the ALJ issued a decision on March 28, 2017, concluding that plaintiff had failed to meet his burden of proof as to either claim. (*Id.* at 55.) Plaintiff appealed to this court on June 25, 2017. (Doc. No. 1.)

**LEGAL STANDARD**

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "The IDEA is a comprehensive educational scheme that confers on students with disabilities a substantive right to public education." *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1166 (9th Cir. 2007). The IDEA requires each educational agency to have an IEP in place for each child with a disability at the beginning of each school year. 20 U.S.C. § 1414(d)(2)(A). The IEP must consider the strengths of the child, parental concerns, evaluations of the child, and the academic, functional, and developmental needs of the child. *Id.* at § 1414(d)(3)(A). The IEP team[5] is also instructed to "consider the use of positive behavioral interventions and supports" if the child exhibits behavior that "impedes the child's learning." *Id.* at § 1414(d)(3)(B). The school district must ensure the IEP team reviews the child's IEP at least once a year and revises it as necessary in the interim. *Id.* at 1414(d)(4)(A).

---

[4] The ALJ rephrased these issues slightly (*see* Doc. No. 22-2 at 40), and plaintiff takes issue with this rephrasing. (Doc. No. 25 at 24–25.) To avoid any dispute over this issue, the court will address these issues exactly as laid out in plaintiff's original due process complaint.

[5] The IEP team includes the parents of a child with a disability, at least one regular education teacher and one special education teacher, and a representative of the school district, as well as optional experts to assist in the decision-making. 20 U.S.C. § 1414(d)(B).

"The IEP is the basic mechanism through which th[e] goal [of providing a FAPE] is achieved for each disabled child." *Pitchford ex rel. M. v. Salem-Keizer Sch. Dist. No. 24J*, 155 F. Supp. 2d 1213, 1233–34 (D. Or. 2001) (quoting *Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 925 (10th Cir. 1995)).

The IDEA provides "procedural recourse" for claims that an IEP determination was made in error. *Kutasi*, 494 F.3d at 1166 (quoting *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007)). Any party may present a complaint about inadequacies in the provision of a FAPE occurring within the prior two years. 20 U.S.C. § 1415(b)(6). If a complaint is not resolved to the parents' satisfaction within 30 days of receipt, a "due process hearing" may be sought by either the parents or the educational agency. *Id.* § 1415(f)(1)(A), (B)(ii). The hearing officer or ALJ who conducts the hearing is tasked with rendering a decision as to whether the child received a FAPE. *Id.* § 1415(f)(3)(A), (E). If a party is aggrieved by the decision of the ALJ, they may bring a civil action in either state or federal court. *Id.* § 1415(i)(2)(A).

In a civil action brought under the IDEA, the district court must receive the records of the administrative proceeding, and "grant such relief" as it deems appropriate, based on a preponderance of the evidence. *Id.* § 1415(i)(2)(C); *see also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 890–92 (9th Cir. 1995) (noting that this unusual judicial review provision "tells the court to hear additional evidence outside the administrative record and then base its decision on the preponderance of the evidence") (internal quotations omitted). The court may also award attorneys' fees to the prevailing party. 20 U.S.C. § 1415(i)(3). Whichever party appeals the decision of the ALJ to the district court bears the burden of demonstrating that the ALJ's decision was in error. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007); *James M. ex rel. Sherry M. v. Hawaii*, 803 F. Supp. 2d 1150, 1158 (D. Haw. 2011); *J.S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1184 (W.D. Wash. 2002).

As is common in review of administrative agency determinations, the ALJ's decision in an IDEA due process hearing receives a measure of deference from the courts. However, "[u]nder the IDEA, federal courts accord considerably less deference to state administrative proceedings than they do in most instances of 'judicial review of . . . agency actions, in which

courts generally are confined to the administrative record and are held to a highly deferential standard of review.'" *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012) (quoting *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1005 (9th Cir. 2011)); *see also JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). While "[c]omplete *de novo* review . . . is inappropriate," *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001), courts are to "give due weight to the state administrative proceedings,"[6] and, "at a minimum, must consider the findings carefully." *R.B. ex rel. F.B.*, 496 F.3d at 937 (quotations and internal citations omitted); *see also Anchorage Sch. Dist.*, 689 F.3d at 1053. The findings of the ALJ should be given additional deference when "they are thorough and careful." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994); *see also R.B. ex rel. F.B.*, 496 F.3d at 937. *But see M.C. ex rel. M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017) (indicating the court may, but is not required, to "accord some deference to the ALJ's factual findings, but only where they are 'thorough and careful'") (quoting *Union Sch. Dist.*, 15 F.3d at 1524).[7]

## ANALYSIS

**A.      Scope of the Case**

Before turning to the merits of the issues before the court, it is necessary to clarify what is at issue in this case—and, even more importantly, what this case is not about. The ALJ's decision declined to address a number of issues raised in plaintiff's closing brief submitted in

---

[6] In California, these administrative or due process hearings "are conducted by the Office of Administrative Hearings, a state agency independent of the Department of Education." *Fairfield Suisun Unified Sch. Dist. v. Cal. Dep't of Educ.*, 780 F.3d 968, 969 (9th Cir. 2015); *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1085 n.3 (9th Cir. 2012).

[7] The Ninth Circuit has also noted that federal courts "should not substitute their own notions of sound educational policy for those of the school authorities which they review," and "must grant deference to the sound judgment of the various state educational agencies." *Wilson v. Marana Unified Sch. Dist. No. 6 of Pima Cty.*, 735 F.2d 1178, 1183 (9th Cir. 1984); *see also Amanda J. ex rel. Annette J.*, 267 F.3d at 887–88; *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987) (noting that while deference is owed, "[h]ow *much* deference to give state educational agencies . . . is a matter for the discretion of the courts"). The undersigned takes this admonition as reiterating that a discretionary amount of deference is owed to the decision of the ALJ—an officer of the state, *see* note 6, *supra*—rather than to the defendant school district.

those proceedings after finding that those issues "exceed the scope of the issues presented in this case and will not be addressed[.]" (Doc. No. 22-2 at 50 n.13.) This court, in turn, directed the parties to provide supplemental briefing addressing the scope of this case challenging the ALJ's decision.

Although this court is generally limited to reviewing those issues included in the due process complaint, the Ninth Circuit has recognized several exceptions to this rule. First, a party does not waive an issue if it was unaware of its existence at the time the due process complaint was filed. *See M.C. ex rel. M.N.*, 858 F.3d at 1196 (declining to hold that an issue was waived because "plaintiffs weren't aware that the District had unilaterally changed the IEP until after the ALJ had restated the issues, so they could hardly have raised" the issue beforehand); *Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 18 (1st Cir. 2003) ("[T]he appellants' failure to raise a then-nonexistent compensatory education claim before the hearing officer is not fatal to judicial review."). Second, even if an issue is not included in the due process complaint, that issue is nonetheless preserved for appeal if it was actually tried by the parties at the administrative hearing. *See M.C. ex rel. M.N.*, 858 F.3d at 1196 (noting that under Federal Rule of Civil Procedure 15(b)(2), an issue "tried by the parties' express or implied consent . . . must be treated in all respects as if raised in the pleadings"). Unless the additional issues advanced by plaintiff fall into these recognized exceptions, however, the court's analysis is necessarily confined to the issues identified in the due process complaint.

As stated above, in this case plaintiff's due process complaint sought review of two distinct issues. First, it asked whether the District denied A.W. a FAPE from January 2016 to the present by "[f]ailing to provide him with a one-to-one ABA-trained aide with supervision by a Board Certified Behavior Analyst for two hours per week." (Doc. No. 22 at 7.) Second, it asked whether the District denied A.W. a FAPE from January 2016 to the present by "[f]ailing to file for due process to prove its offer of January 2016, which was not agreed upon by the Wright's [*sic*], was an offer of FAPE." (*Id.*)

With respect to whether plaintiff was aware of any additional issues, the court finds nothing in the record demonstrating that plaintiff became aware of any additional issues only

belatedly. Particularly with respect to issues of parental participation, plaintiff has provided no explanation as to why these issues could not have been raised in the due process complaint. A.W.'s parents attended multiple meetings regarding implementation of an IEP for him, and plainly took issue with the contents of the IEPs—A.W.'s mother testified at the hearing before the ALJ that she declined to sign the IEPs because she believed they did not provide for a one-to-one aide with BCBA supervision. (Doc. No. 22-2 at 153:3–8, 155:19–25, 156:1–7.) To the extent plaintiff now contends that the failure to properly engage A.W.'s parents in the development of the IEPs amounted to an IDEA violation separate and apart from the alleged substantive failure to provide A.W. with proper aide supervision, plaintiff clearly could have and should have made such allegations in the due process complaint.

Similarly, the record indicates that no additional issues were tried before the ALJ at the due process hearing. To the contrary, at multiple points during that administrative hearing, there was arguably an effort by one side to raise additional issues, which the ALJ rejected. For instance, following the opening statement given by plaintiffs' counsel, defense counsel objected that plaintiff was attempting to inject new issues into the case, specifically the issue of predetermination.[8] (Doc. No. 22-2 at 123:20–25, 124:1–3.) The ALJ reaffirmed her understanding that there was no "expansion of issues" beyond the two issues laid out in the due process complaint. (Doc. No. 22-2 at 124:7–11.) A similar incident occurred during examination of A.W.'s mother, with the ALJ stating plainly that

> This case is about the January 19th IEP and whether it did or didn't offer a one-to-one ABA trained aide with BCBA supervision, about the March 4 IEP . . . whether it offered the one-to-one aide and whether District should have filed to get authorization to implement the January IEP and they didn't. . . . That's it."

(Doc. No. 22-2 at 179:16–25.) No additional issues were considered in the administrative proceedings. Indeed, plaintiff's closing brief before the ALJ specifically stated that several additional issues were not contested in the action. These included, but were not limited to: (1)

---

[8] "A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement." *Cupertino Union Sch. Dist. v. K.A.*, 75 F. Supp. 3d 1088, 1099 (N.D. Cal. 2014).

implementing an IEP without consent, or in the alternative, not implementing any IEP; and (2) denying parent participation in the determination of whether or not BCBA supervision would be provided in the March 4, 2016 IEP. (*Id.* at 134 n.1.) Because no additional issues were actually litigated in the administrative proceedings, and because the parties have offered no explanation as to why they could not have been raised in the due process complaint or otherwise litigated, the court is compelled to confine its analysis to the issues presented in the due process complaint.

**B.  Whether the ALJ Erred in Concluding that Plaintiff Failed to Establish the District Violated the IDEA by Failing to Offer A.W. a Full-time One-to-one Behavior Analysis-trained Aide with Two Hours Per Week of Supervision by a BCBA[9]**

"To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, ___ U.S. ___, ___, 137 S. Ct. 988, 999 (2017). Plaintiff argues that from January 2016 onward, the District denied A.W. a FAPE because it failed to provide him with a one-to-one ABA-trained aide with BCBA supervision for two hours per week.

The evidence of record indicates, and the ALJ found, that although the January 19, 2016 IEP did not state in written form that A.W. was to be provided with a one-to-one aide with BCBA supervision, he was in fact provided with these services. (Doc. No. 22-2 at 51.) The March 4, 2016 IEP similarly did not state in writing that A.W. would be provided with these services. However, while A.W. continued to be provided supervision by an aide, the District conceded that from March to June 2016, "Student's aide was no longer supervised by a BCBA for two hours per week." (*Id.* at 47.) The ALJ found that the failure to offer continued supervision by a BCBA in writing constituted a violation of 20 U.S.C. § 1414(d)(1)(A)(i)(VII), but nonetheless denied plaintiff's request for relief after finding that this violation did not impede A.W.'s right to a FAPE. *C.f. W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir.

---

[9] As the plaintiff in the proceedings before the ALJ, A.W. and his guardian ad litem bore the burden of persuasion in showing that the District denied A.W. a FAPE. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 58 (2005) ("[T]he burden of persuasion lies . . . upon the party seeking relief.").

12

1992) (noting that only "procedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE.") (internal citations omitted). Plaintiff challenges that conclusion in this action.

The sole evidence cited by plaintiff as to why A.W. required a one-to-one aide with BCBA supervision is that A.W.'s disruptive behavior had not been eliminated. The ALJ made findings to this effect, noting that although "Student had made progress with his maladaptive behaviors . . . he still spit, bit, kicked, hit, screamed, lay down on the floor, and swiped all items off Ms. Larsen's desk." (Doc. No. 22-2 at 45.) This evidence established that A.W.'s behavioral issues had not been entirely resolved, but it does not follow that A.W. was denied a FAPE because those behaviors persisted. A student is not denied a FAPE simply because the district's proposed educational plan provides less educational benefit than what a student's parent might prefer. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1095–96 (9th Cir. 2013) ("The IDEA does not require states to provide disabled children with 'a potential-maximizing education.'") (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 197 n.21 (1982)); *Anchorage Sch. Dist.*, 689 F.3d at 1057. Instead, the test for whether a FAPE is substantively appropriate under the IDEA is whether the "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (quoting *Rowley*, 458 U.S. at 206–07); *see also R.P. ex rel. C.P. v. Prescott Unified School Dist.* 631 F.3d 1117, 1122 (9th Cir. 2011).

Although A.W.'s mother stated that he needed supervision by a BCBA, A.W.'s mother is not a behavior or education specialist. (Doc. No. 22-2 at 47.) By contrast, Ms. Hammer, the school psychologist who opined that A.W. did not require supervision by a BCBA, holds a bachelor's degree in psychology and a master's degree in education with an emphasis on school psychology. (*Id.* at 46 n.1.) She also possesses work experience as a behavior therapist, and has been a school psychologist for approximately five years. (*Id.*) Based upon these qualifications, and based upon the testimony of these individuals at the administrative hearing, the ALJ found

the testimony of plaintiff's mother to be "unsupported and less persuasive" than Ms. Hammer's testimony. (*Id.* at 48.) Plaintiff has failed to present any evidence or argument undermining the ALJ's determination in this regard. The ALJ's findings indicate that although A.W.'s maladaptive behavior was not totally controlled, the educational program implemented by the District was providing some tangible benefit. While it is plausible to believe that BCBA supervision of A.W.'s aide could have provided some greater benefit, plaintiff has failed to demonstrate that such supervision was necessary in order for A.W. to receive a FAPE.

**C.      Whether the ALJ Erred by Failing to Require Defendant to File for Due Process**

Plaintiff also argues the ALJ erred by excusing defendant's failure to file for a due process hearing once an impasse was reached over defendant's refusal to include a one-to-one aide and BCBA supervision in the January 19, 2016 IEP. (Doc. No. 25 at 22.) Under California law, a school district is required to initiate a due process hearing if the school district determines that a portion of an IEP to which a parent does not consent is necessary to provide a child with a FAPE. *I.R. ex rel. E.N. v. L.A. Unified Sch. Dist.*, 805 F.3d 1164, 1165 (9th Cir. 2015). Plaintiff contends that because A.W.'s parents did not consent to the January 19, 2016 IEP, and because the district determined that the provisions therein were necessary in order to provide him with a FAPE, it was the District's obligation to request the required due process hearing.

The text of California Education Code § 56346(f), on which plaintiff relies, is instructive. That provision states in relevant part that "if the public agency determines that the proposed special education program component to which the parent does not consent is necessary to provide a free appropriate public education to the child, a due process hearing shall be initiated in accordance with Section 1415(f) of Title 20 of the United States Code." In other words, it applies where the District believes that some baseline educational program is necessary to ensure that a student receives a FAPE, but the student's parents refuse to consent to it. The facts in *I.R.* illustrate this point. In that case, multiple IEPs recommended that the student be placed in a special education environment at plaintiff's elementary school. *I.R.*, 805 F.3d at 1166. In a letter to the student's parent, the school principal noted that the IEP members believed the student required a smaller classroom setting with individualized instruction, which was not available in

14

the general education classroom. *Id.* Nonetheless, the student's mother refused to consent to the student's placement in a special education program, because of which plaintiff remained in the general education classroom. *Id.*

The facts in this case are reversed from those presented in *I.R.* Here, A.W.'s mother was seeking a more specialized educational program than defendant had proposed, whereas in *I.R.* it was the district that sought a more specialized program. Based upon the plain meaning of the language of that statute as well as common sense[10], the undersigned concludes that the difference between the situation presented here and that confronted in *I.R.* is dispositive. There is no evidence before the court demonstrating that the District ever determined that it was not offering A.W. a FAPE. To the contrary, District witnesses Farrell and Hammer testified that A.W. did not require BCBA oversight in order to receive a FAPE, testimony the ALJ found to be "persuasive." (Doc. No. 22-2 at 54.) Under those circumstances, § 56346(f) is not triggered: that provision requires a district to seek a due process hearing only if it determines that the educational program to which the parents do not consent "is necessary to provide a free appropriate public education to the child." Cal. Educ. Code § 56346(f). Because the court finds no evidence that the District believed it was not providing A.W. with a FAPE, it was not required to seek a due process hearing under § 56346(f). *See I.R.*, 805 F.3d at 1170 ("If, in the school district's judgment, the child *is not receiving a FAPE*, the district must act with reasonable promptness to correct that problem by adjudicating the differences with the parents.") (emphasis added).

## CONCLUSION

At bottom, and as the due process complaint from which this challenge stems makes clear, this case has always been about two issues. The first is whether A.W. was required to have a one-to-one aide with BCBA supervision in order to have received a FAPE, and the second is which party was responsible for seeking a due process hearing in the event there was a dispute about the adequacy of A.W.'s education. In accordance with traditional legal principles, plaintiff bore the burden of persuasion before the ALJ, who found that plaintiff had failed to demonstrate that the

---

[10] The court notes that a plaintiff in the circumstances presented here may certainly file for a due process hearing, just as the plaintiff in this case did.

15

educational programs offered by the District denied A.W. a FAPE.  Similarly, under Ninth Circuit precedent and California law, the District was not obligated to seek a due process hearing under the circumstances of this case.  Any additional issues—such as whether A.W.'s parents were aware of the services offered to A.W., or whether the District was required to obtain the parents' consent before implementing a particular IEP—were not raised in the due process complaint, and plaintiff has offered no explanation as to why those issues could not have been raised in the first instance at the time that complaint was submitted.  In light of the deference owed to the ALJ's well-reasoned and thorough opinion, the court finds no basis to disturb that decision.

    For these reasons, the decision of the ALJ is affirmed and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **March 7, 2019**

_____
UNITED STATES DISTRICT JUDGE